O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHLEEN PAULSEN, | Case No. EDCV 03-1330 AN |
| Plaintiff, | MEMORANDUM AND ORDER |
| v. | |
| JO ANNE B. BARNHART, COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

## I. INTRODUCTION

Pursuant to 42 U.S.C. § 405(g), Plaintiff is seeking judicial review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her claim for disability insurance benefits ("DIB") pursuant to Title II of the Social Security Act ("Act"). Both parties have consented to proceed before the undersigned Magistrate Judge. In accordance with the Court's Case Management Order, the parties have filed a joint stipulation and request for an order summarily deciding issues concerning remand and/or immediate payment of benefits ("JS"). For the reasons stated below, Plaintiff's request for an order remanding the case for further proceedings not inconsistent with this Memorandum and Order is granted, and the Commissioner's request for an order affirming her final decision is denied.

///

## II. BACKGROUND

The relevant background facts are familiar to both parties. Plaintiff does not stipulate that the ALJ's decision fairly and accurately summarizes the hearing testimony and medical evidence. Pages of the JS will be cited in brackets preceded by the "JS" signal; pages of the administrative record will also be cited in the same fashion but without signals ("[ ]").

## III. DISCUSSION

### A. Standard of Review

This Court must review the record as a whole and consider adverse as well as supporting evidence. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The Commissioner's final decision affirming an ALJ's decision that a claimant is not disabled must be upheld if the ALJ's findings are supported by substantial evidence in the record and the proper legal standards were applied. *See Curry v. Sullivan*, 925 F.2d 1127, 1129 (9th Cir. 1990). The harmless-error rule applies. *Id.* at 1131. "Substantial evidence means more than a mere scintilla, but less than a preponderance." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). It is further defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*; *see also*, *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed. 2d 842 (1971). The ALJ is responsible for determining credibility, resolving conflicting testimony, resolving ambiguities, and "is entitled to draw inferences 'logically flowing from the evidence.'" *Andrews*, 53 F.3d at 1039; *Macri v. Chater*, 93 F.3d 540, 543-544 (9th Cir. 1996). Consequently, inferences and conclusions as the ALJ may reasonably draw from the evidence are upheld. *See Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). Likewise, an ALJ's findings are upheld where the evidence is susceptible of more than one rational interpretation. *Andrews*, 53 F.3d at 1039-1040.

To collect DIB or SSI benefits, Plaintiff must suffer from a "disability." 42 U.S.C. §§ 423(a)(1)(D); 1382(a). To be disabled within the meaning of the Act, a claimant must

suffer from a "medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.*, §§423(d)(1)(A); 1382c(a)(3)(A). The impairment must be of "such severity that [the claimant] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." *Id.*, §§ 423(d)(2)(A); 1382c(a)(3)(B). The claimant has the burden of showing that she or he is disabled. *Id.*, §§ 423(d)(5); 1382c(a)(3)(H)(i) ; *Clem v. Sullivan*, 894 F.2d 328, 330 (9th Cir. 1990).

B.   <u>The Five-Step Sequential Analysis</u>

The Social Security Regulations use a five-step sequential analysis for making DIB and SSI disability determinations. 20 C.F.R. §§ 404.1520, 416.920. The first step asks whether the claimant is working. The second step asks whether the claimant has a "severe" impairment, which is defined as an impairment which "significantly" -- more than minimally -- limits an individual's ability to perform basic work activities. *Id.*, §§ 404.1521, 416.921; *Bowen v. Yuckert*, 482 U.S. 137, 154, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987). However, this step two determination is "'a *de minimis* screening device to dispose of groundless claims.'" *Edlund v. Massanari*, 253 F.3d 1152, 1158 (9th Cir. 2001) (internal citations omitted). The third step asks whether the claimant has an impairment which meets or equals the criteria of any impairment identified in the appendix to the Social Security Regulations commonly referred to as the "Listings." *Id*.

The fourth and fifth steps require that the ALJ assess the claimant's residual functional capacity ("RFC"). RFC is a determination of a claimant's remaining abilities to perform work. *Id.*, §§ 404.1545, 416.945(a). In determining a claimant's physical limitations, the ALJ considers the claimant's ability to lift weight, sit-stand, push-pull, etc. *Id.*, §§ 404.1545(b), 416.945(b). Mental, environmental and other limitations such as the ability to see and hear are also part of the RFC determination. *Id.*, §§ 404.1545(c) and (d), 416.945(c) and (d). A claimant's limitations are categorized as either exertional

1 or non-exertional; exertional limitations are those based upon strength considerations
2 alone. *Cooper v. Sullivan*, 880 F.2d 1152, 1156 (9th Cir. 1989). Non-exertional
3 limitations are unrelated to strength and include "mental, sensory, postural, manipulative,
4 and environmental limitations." *Id*. The exertional requirements of work are classified
5 as sedentary, light, medium, heavy and very heavy. *Id.*, §§ 404.1567, 416.967.

6       Once the RFC is determined, the fourth step asks whether the claimant can perform
7 his or her past relevant work; at this step the claimant also has the burden of proving he
8 or she is unable to perform past relevant work.

9       At the fifth step in the analysis, the burden shifts to the Commissioner to prove that
10 the claimant, based on his or her age, education, work experience, and residual functional
11 capacity, can perform other substantial and gainful work existing in the regional or
12 national economy. *Id.*, §§ 404.1520, 416.920. The Commissioner can satisfy this fifth
13 step burden by either (1) applying the Medical-Vocational Guidelines (the "Grids") found
14 at 20 C.F.R. Pt. 404, Subpt. P, App. 2, §§ 200.00-204.00, or (2) taking the testimony of
15 a Vocational Expert ("VE"). *Burkhart v. Bowen*, 856 F.2d 1335, 1340 (9th Cir. 1988).
16 However, the Commissioner cannot rely upon the Grids and must use a VE where the
17 claimant's non-exertional limitations are 'sufficiently severe' so as to significantly limit
18 the claimant's ability to perform the full range of sedentary, light, or medium work. *Id*.

19       If the answer to any of the questions in the five-step analysis establishes the
20 claimant is or is not disabled, the evaluation ends. *Id.*, §§ 404.1520(a), 416.920(a); *see*
21 *also Bowen v. Yuckert*, 482 U.S. at 140.

22 C.   <u>Analysis of Disputed Issue</u>

23       At step two of the five-step sequential analysis, the ALJ found the medical
24 evidence showed that Plaintiff suffered from a severe impairment consisting of
25 degenerative disc disease of the thoracic and lumbosacral spine, but that her fibromyalgia
26 and depression were not severe. Plaintiff principally contends the ALJ erred in finding
27 her fibromyalgia and depression were not severe because the ALJ failed to give proper
28 consideration to the medical evidence, particularly the opinions and findings of her

Page 4

1 treating rheumatologist, primary physician, and an examining rheumatologist. The
2 Commissioner disagrees. She contends the ALJ's step two finding with respect to
3 Plaintiff's depression is not erroneous but, even if it was, the error was harmless since the
4 ALJ's hypothetical to the VE accounted for Plaintiff's severe depression, and the VE still
5 identified other work Plaintiff could perform. [AR at 69.] As to Plaintiff's fibromyalgia,
6 the Commissioner contends the ALJ's finding is correct because he relied properly upon
7 the opinions of Dr. Ostrow, a non-examining medical expert who testified at the hearing
8 before the ALJ; and (2) Dr. Fabella, a consulting examining physician.

9 After reviewing the whole record, the Court finds the ALJ's step-two finding with
10 respect to Plaintiff's depression was not erroneous for the reasons contended by the
11 Commissioner. However, the Court finds the ALJ's finding that Plaintiff's fibromyalgia
12 was not severe at step two was erroneous.

13 Under the Act's regulations, "[a]n impairment or combination of impairments is
14 not severe if it does not significantly limit [a claimant's] physical or mental ability to do
15 basic work activities." 20 C.F.R. § 404.1521(a). "Basic work activities" are defined as
16 including such capabilities as use of judgment, 20 C.F.R. § 404.1521(b)(4); responding
17 appropriately to supervision, co-workers and usual work situations, 20 C.F.R. §
18 404.1521(b)(5); and dealing with changes in a routine work setting, 20 C.F.R. §
19 404.1521(b)(6). As discussed above, the step two determination is "'a *de minimis*
20 screening device to dispose of groundless claims,'" *Edlund*, 253 F.3d at 1158, and a
21 "severe" impairment is defined as an impairment which "significantly" -- more than
22 minimally -- limits an individual's ability to perform basic work activities., *Id.*, §§
23 404.1521, 416.921; *Bowen*, 482 U.S. at 154.

24 "[F]ibromyalgia, previously called fibrositis, [is] a rheumatic disease that causes
25 inflammation of the fibrous connective tissue components of muscles, tendons, ligaments,
26 and other tissue." *Benecke v. Barnhart*, 379 F.3d 587, 589-90 (9th Cir. 2004), *also citing,*
27 *Brosnahan v. Barnhart*, 336 F.3d 671, 672 n. 1 (8th Cir. 2003). "Common
28 symptoms...include [long-term but variable levels] of chronic pain throughout the body,

1  multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that can
2  exacerbate the cycle of pain and fatigue associated with this disease." *Id.* "Fibromyalgia's
3  cause is unknown, there is no cure, and it is poorly-understood within much of the
4  medical community. The disease is diagnosed entirely on the basis of patients' reports of
5  pain and other symptoms.  The American College of Rheumatology [("ACR")] issued a
6  set of agreed-upon diagnostic criteria in 1990, but to date there are no laboratory tests to
7  confirm the diagnosis."  *Id.*  "According to the ACR's 1990 standards, fibromyalgia is
8  diagnosed based on widespread pain with tenderness in at least eleven of eighteen sites
9  known as trigger points." *Brosnahan*, *id*.

10  Medical records from Dr. Sebai, Plaintiff's treating rheumatologist, show that he
11 ultimately diagnosed Plaintiff as suffering from "severe fibromyalgia," and that his
12 diagnosis was supported by independent medical evidence and his own clinical
13 examination that showed Plaintiff had "18/18" diffuse tender trigger points consistent
14 with fibromyalgia.  [AR 313, 404-05, 409.]   After reviewing independent medical
15 evidence and conducting his own examination, Dr. Jason, an examining rheumatologist,
16 also found Plaintiff's impairments included fibromyalgia, and he opined that she would
17 "be out of work more than she was there, adding that she also has "limitations related to
18 her use of medications, as she is unable to concentrate."   [AR at 474.]   Finally, Dr.
19 Beseth, Plaintiff's primary treating physician, also diagnosed Plaintiff with fibromylagia,
20 psoriatic spondyloarthropath of the lumbar spine, and degenerative joint disease based
21 on MRI scans, x-rays, and clinical evaluations; he also opined that, in a normal 8-hour
22 work day,  Plaintiff's impairments prevented her from sitting or standing/walking more
23 than one hour and required her to get up and move around about four times an hour for
24 about ten minutes, prevented her from lifting or carrying more than five pounds,
25 markedly limited her ability to grasp turn, twist, perform fine manipulations, or reach
26 with her upper extremities, and that she had non-exertional limitations that required her
27 to avoid all noise, fumes, gases, temperature extremes, humidity, heights, pushing,
28 pushing, pulling, kneeling, bending, or stooping, and that she was incapable of tolerating

even a "low stress" work environment. [AR 435-41, 492-99.]

Although the foregoing medical reports and records from Drs. Sebai, Beseth, and Jason clearly establish that Plaintiff's fibromyalgia claim is not "groundless," the ALJ nevertheless found this impairment was not severe at step two based upon opinions expressed by Drs. Ostrow and Fabrella. The Commissioner argues Dr. Ostrow properly found Plaintiff was capable of a limited range of sedentary work. Moreover, she argues Dr. Ostrow properly rejected Dr. Sebai's opinion because, even though Dr. Sebai found Plaintiff had "18/18" diffuse tender trigger points, his notes regarding this finding did not indicate the exact location and degree of sensitivity of Plaintiff's trigger points. Likewise, the Commissioner contends the ALJ properly relied upon Dr. Fabrella's opinion that Plaintiff was capable of light work notwithstanding her limitations because, on the particular day that Dr. Fabrella examined Plaintiff, she had "no definite trigger point tenderness." [JS at 21:12-19.]

The opinions of Drs. Ostrow and Fabrella regarding Plaintiff's fibromyalgia conflict with the opinions and medical records provided by Drs. Sebai and Beseth, Plaintiff's treating physicians, and Dr. Jason, an examining rheumatologist. Accordingly, the ALJ could only favor Dr. Ostrow's consulting opinion over the conflicting opinions expressed by Drs. Sebai, Beseth, and Jason if Dr. Ostrow's opinion was supported by other independent medical evidence in the record and the ALJ provided specific and legitimate reasons for rejecting the opinions expressed by Drs. Sebai, Beseth, and Jason. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996); *Andrews v. Shalala*, 53 F.3d 1035, 1039-43 (9th Cir. 1995). The ALJ had to provide specific and legitimate reasons supported by substantial evidence in the record for favoring Dr. Fabrella's conflicting opinion. *Lester*, *id*.

The Court finds Dr. Ostrow's opinion does not constitute a specific and legitimate reason or substantial evidence for rejecting Dr. Sebai's conflicting opinion and finding. Dr. Sebai's reference to "18/18" in his clinical notes combined with his other noted findings clearly reflect that he found Plaintiff manifested tenderness in *all* of the

"eighteen sites known as trigger points," not just eleven or more of these known sites. *Brosnahan*, *id*. Further, because all 18 of these trigger points are known sites, and because the degree of tenderness is known to vary, Dr. Sebai's "18/18" reference did not have to identify the exact location and degree of sensitivity to constitute substantial evidence, particularly since he, unlike Dr. Ostrow, is a rheumatologist, and the "18/18" reference in his notes is not at all cryptic under the circumstances.

Likewise, Dr. Fabella's finding that Plaintiff did not manifest any definite trigger point tenderness on the sole date that he examined her is not a specific and legitimate reason supported by substantial evidence in the record for discrediting the conflicting opinions of Plaintiff's treating physicians because, as discussed above, one of the symptoms of fibromyalgia is that it waxes and wanes in cycles.

Accordingly, the Court finds the ALJ's finding that Plaintiff's severe impairments did not include fibromyalgia at step two was erroneous and not supported by substantial evidence in the record. The ALJ's step two error contaminated the balance of his sequential analysis. Accordingly, the Court finds a remand is required. On remand, the ALJ must find Plaintiff's fibromyalgia constitutes a severe impairment at step two and then consider the combined effect of all of the claimant's impairments on her ability to function, without regard to whether each alone was sufficiently severe. He must also credit the opinions and findings expressed by Drs. Sebai, Beseth and Jason unless he provides specific and legitimate reasons supported by substantial evidence in the record for discrediting their opinions and findings. Further, if the ALJ cannot provide proper reasons, then he must pose a hypothetical to the VE that incorporates all of the exertional and non-exertional limitations expressed by Drs. Sebai, Beseth and Jason.

## IV. CONCLUSION

For the reasons discussed above, the Court finds the ALJ's determination of non-disability is not free of legal error and supported by substantial evidence. Accordingly, Plaintiff's request for an order directing the payment of benefits or remanding this case for further proceedings not inconsistent with this Memorandum and Order pursuant to

1  Sentence Four of 42 U.S.C. § 405(g) is GRANTED, and the Commissioner's request for
2  an order affirming the Commissioner's final decision and dismissing the action is
3  DENIED.  The clerk shall enter judgment, close the file and terminate all pending
4  motions.

6  DATED: September 30, 2005          /s/ Arthur Nakazato
                                      ARTHUR NAKAZATO
7                                     UNITED STATES MAGISTRATE JUDGE

Enter/JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHLEEN PAULSEN, | Case No. EDCV 03-1330 AN |
| Plaintiff, | JUDGMENT |
| v. | |
| JO ANNE B. BARNHART, COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

For the reasons set forth in the accompanying memorandum and order, it is hereby ADJUDGED AND DECREED THAT, (1) Plaintiff's request for an order directing the immediate payment of benefits or remanding the case for further proceedings is GRANTED; (2) the Commissioner's request for an order affirming the Commissioner's final decision and dismissing the action is DENIED; and (3) judgment is hereby entered in Plaintiff's favor.

DATED: September 30, 2005     /s/ Arthur Nakazato
                              ARTHUR NAKAZATO
                              UNITED STATES MAGISTRATE JUDGE